IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

YASH SINGH
202 Casey Way
Hatfield, PA 19440

         Plaintiff,

v.

ARRIS GROUP, INC.
101 Tournament Drive
Horsham, PA 19044

         Defendant.

Civil Action No.:_____

**JURY TRIAL DEMANDED**

---

## COMPLAINT – CIVIL ACTION

Plaintiff, Yash Singh ("Plaintiff"), by and through his undersigned attorneys, for his Complaint against Defendant, Arris Group, Inc. ("Defendant") alleges as follows:

### INTRODUCTION

1. Plaintiff brings this Complaint contending that Defendant has violated Plaintiff's rights protected by the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, by terminating his employment on the basis of his age. Plaintiff additionally contends that the Defendant retaliated against him for exercising his rights under the Family and Medical Leave Act, ("FMLA") 29 U.S.C. § 2601, *et seq.* Finally, Plaintiff contends that Defendant terminated his employment on the basis of his race and national origin, in violation of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e, *et seq.*

### PARTIES

2. Plaintiff, Yash Singh, is a citizen of the United States and Pennsylvania, and currently maintains a residence at 202 Casey Way, Hatfield, Pennsylvania, 19440.

3. Defendant, Arris Group, Inc., is a Delaware Corporation that conducts operations in several states, including the Commonwealth of Pennsylvania, where it maintains a place of business at 101 Tournament Drive, Horsham, PA 19044.

## JURISDICTION AND VENUE

4. On or about August 17, 2015, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. 200035(b) and (e). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2015-04046. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

5. By correspondence dated February 29, 2016, Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising him that he had ninety (90) days to file suit against Defendant.

6. On May 2, 2016, within the statutory time frame, Plaintiff filed the instant action.

7. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

8. This is an action authorized and instituted pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 20003, *et seq.*

9. This Court also has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343.

10. The venue in this district is proper pursuant to 28 U.S.C. § 1391, insomuch as the Plaintiff resides in this district and the events giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

11. Paragraphs 1 through 10 are hereby incorporated by reference, as though the same were more fully set forth at length herein.

12. In October 1999, Defendant hired Plaintiff into the position of Project Manager.

13. During his tenure of employment with Defendant, Plaintiff received positive reviews of his performance, occasional praise, raises, bonuses, promotions, and no justifiable discipline.

14. By way of a series of promotions, in or about early 2013, Plaintiff was selected for the position of Senior Program Manager.

15. At the time of his unlawful termination from employment, Plaintiff was fifty-five (55) years old.

16. Plaintiff is of Indian national origin, and his race is Indian-American.

17. In or around August 2014, Jennifer Brewster ("Ms. Brewster"), Senior Manager, became Plaintiff's direct supervisor.

18. Ms. Brewster is significantly younger than Plaintiff, and is approximately in her late-thirties (30s) to early-forties (40s).

19. Shortly after becoming Plaintiff's supervisor, Ms. Brewster began targeting Plaintiff with negative treatment, to which she did not subject younger and other Caucasian employees in the group.

20. By way of example, in or about late 2014 and early 2015, Ms. Brewster antagonistically disregarded any and all of Plaintiff's suggestions in group meetings which she facilitated.

21. Plaintiff was responsible for many of Defendant's most complex projects, having acquired extensive skill during his more than fifteen (15) years of employment with Defendant.

22. Of note, Plaintiff was the only employee under Ms. Brewster's supervision to generate over one million dollars ($1,000,000.00) in revenue for Defendant during the calendar year prior to his date of termination.

23. Additionally, Plaintiff secured a project for Defendant in early 2015 worth in excess of eight hundred thousand dollars ($800,000.00).

24. Nevertheless, Ms. Brewster refused to acknowledge Plaintiff's exemplary performance, although she commonly praised, younger, non-Indian, American-born employees whom Plaintiff had surpassed with respect to generation of revenue, including Don Scheu ("Mr. Scheu"), Senior Program Manager, who is Caucasian, American-born and in his early forties (40s), and Kim Andrews ("Mr. Andrews"), who also American-born and in his early forties (40s).

25. Ms. Brewster commonly insinuated that Plaintiff was not a valuable employee of Defendant, repeatedly remarking to Plaintiff and his colleagues that Plaintiff "makes too much money."

26. In or about March 11, 2015, Ms. Brewster issued Plaintiff an unjustifiably negative performance rating of 2.66, citing patently false accusations of alleged poor performance and failure to complete work-related responsibilities.

27. Shortly thereafter, Plaintiff reported to Sean Walker ("Mr. Walker"), Senior Director and Chirag Trivedi ("Mr. Trevedi"), Vice President that he believed that the performance review he had recently received was inaccurate and discriminatory. In support

thereof, Plaintiff provided evidence of positive feedback which he received from one of Defendant's highest revenue-generating customers.

28. Additionally, Plaintiff complained to Ms. Brewster that he believed that, in light of his history of positive performance, Ms. Brewster had targeted him with discriminatory treatment.

29. On or about March 24, 2015, shortly after registering his complaint regarding Ms. Brewster's conduct, Mr. Trevedi responded to Plaintiff's initial message and stated that he would soon be placed on a Performance Improvement Plan ("PIP").

30. On March 29, 2015, Plaintiff requested a leave of absence under the FMLA to care for his mother, who suffered from Alzheimer's disease and an abnormal cardiac rhythm, which required the insertion of a pacemaker.

31. Defendant approved Plaintiff's request for FMLA leave from March 30, 2015 until June 21, 2015.

32. On or about June 25, 2015, shortly after his return to work, Defendant issued Plaintiff a PIP, which had a three (3) month duration, and stated that Plaintiff would be reevaluated accordingly in September 2015.

33. At no point prior to the PIP had Plaintiff ever received any formal discipline.

34. On or about June 30, 2015, Defendant demanded Plaintiff sign and return the PIP, verifying its contents and agreeing to comply with all terms enumerated therein. Plaintiff attached an addendum, in writing, explaining his belief that Ms. Brewster had placed him on a PIP on the basis of his age, race, and national origin.

35. Plaintiff's addendum constituted a good faith report of discrimination under Title VII and the ADEA.

36. Defendant failed to investigate Plaintiff's report of unlawful workplace discrimination or otherwise take any corrective action against Ms. Brewster.

37. On July 9, 2015, approximately two (2) weeks following his return from FMLA leave, Defendant abruptly terminated Plaintiff's employment for allegedly failing to comply with the terms of his PIP by adding an addendum regarding Defendant's discriminatory practices, despite the fact that Plaintiff's reevaluation by his supervisors and Defendant's Human Resources division was scheduled to occur in September 2015.

38. Defendant failed to allow Plaintiff ninety (90) days to complete the requirements of the PIP.

39. It is believed and therefore averred that Defendant terminated Plaintiff on the basis of his age, race, national origin, and in retaliation for his reports of discrimination connected thereto and his use of leave under the FMLA.

40. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**
**29 U.S.C. § 621, *ET SEQ.***
**DISCRIMINATION AND RETALIATION**

41. Paragraphs 1 through 40 are hereby incorporated by reference, as though the same were more fully set forth at length herein.

42. Defendant violated the ADEA in that it unlawfully subjected Plaintiff to discriminatory treatment on the basis of his age at the time of his termination, fifty-five (55), and on the basis of him being over forty years old.

43. Defendant further violated the ADEA in retaliating against him for registering a good faith report of unlawful discrimination under the ADEA.

44. Defendant acted with malice and with reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

45. Because of Defendant's unlawful acts, Plaintiff suffered damages in the form of, *inter alia*, loss of past and future wages and compensation, loss of reputation, personal humiliation, embarrassment, and loss of life's enjoyment.

46. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

(A) Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

(B) Liquidated damages;

(C) Plaintiff's cost, disbursements and attorney's fees incurred in prosecuting this action;